United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

REBECCA ALLISON GORDON, et al.,

       Plaintiffs,

  v.

FEDERAL BUREAU OF
INVESTIGATION, et al.,

       Defendants.

_____/

No. C 03-01779 CRB

**MEMORANDUM AND ORDER**

    In this Freedom of Information Act ("FOIA") lawsuit plaintiffs seek records from the Federal Bureau of Investigation ("FBI") and the Transportation Security Administration ("TSA") regarding the administration of the "no fly" and other aviation watch lists, as well as agency records concerning plaintiffs Rebecca Gordon and Janet Adams. Now pending before the Court are the parties' second set of cross-motions for summary judgment.

**PROCEDURAL HISTORY**

    The parties initially filed cross-motions for summary judgment. Upon review of the papers, and in light of the nature of the government's claimed exemptions, the Court directed the government to produce copies of all withheld records for the Court's review. After conducting a preliminary review of the claimed exemptions and the withheld documents, the Court ordered defendants to review all of the withheld material to determine whether they

believe in good faith that the withheld material is in fact exempt and, if so, to provide a

detailed affidavit that explains why the particular material is exempt.  The Court also ordered

defendants to promptly disclose to plaintiffs the material which they determined upon their

further review is not exempt.

In response to the Court's order, defendants produced additional materials to

plaintiffs.  According to plaintiffs, the FBI has released an additional 11 pages of documents

in their entirety, as well as portions of most of the previously withheld documents.  The TSA

released an additional six pages in their entirety and additional portions of most of the

remaining documents.  Now pending before the Court are the parties' cross-motions for

summary judgment regarding the remaining withheld material.  Plaintiffs have elected not to

challenge the withholding of "sensitive security information" ("ssi"), except for disclosure of

whether plaintiffs' names appear on any watch lists, the TSA's alleged failure to adequately

describe withheld documents, and the TSA's alleged failure to segregate ssi from non-ssi.

Plaintiffs also do not challenge information withheld on the basis of attorney-client privilege

and documents the government maintains are exempt as "confidential sources" under FOIA

exemption 7(D).

At oral argument, the parties agreed that this Court can resolve their dispute on

summary judgment and that no trial is required.

### LEGAL STANDARD

"FOIA entitles private citizens to access government records."  <u>Minier v. Central</u>

<u>Intelligence Agency</u>, 88 F.3d 796, 800 (9th Cir. 1996).  "The Supreme Court has interpreted

the disclosure provisions broadly, noting that the act was animated by a 'philosophy of full

agency disclosure.'"  <u>Lion Raisins v. U.S. Dep't. of Agriculture</u>, 354 F.3d 1072, 1079 (9th

Cir. 2004) (quoting <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152 (1989)).

Nonetheless, FOIA contains nine exemptions which a government agency may invoke to

protect certain documents from public disclosure.  <u>See id.</u> (citing 5 U.S.C. § 552(b)).

"Unlike the disclosure provisions of FOIA, its statutory exemptions 'must be narrowly

construed.'"  <u>Lion Raisins</u>, 334 F.3d at 1079 (internal quotation and citation omitted).

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1    The agencies resisting public disclosure--here, the FBI and TSA--have "the burden of

2    proving the applicability of an exception." Minier, 88 F.3d at 800. "That burden remains

3    with the agency when it seeks to justify the redaction of identifying information in a

4    particular document as well as when it seeks to withhold an entire document." United States

5    Dep't. of State v. Ray, 502 U.S. 164, 173 (1991).  An agency "may meet its burden by

6    submitting a detailed affidavit showing that the information logically falls within the claimed

7    exemptions." Minier, 88 F.3d at 800 (internal quotation marks and citation omitted).  "In

8    evaluating a claim for exemption, a district court must accord 'substantial weight' to

9    [agency] affidavits, provided the justifications for nondisclosure are not controverted by

10   contrary evidence in the record or by evidence of [agency] bad faith." Id. (internal quotation

11   marks and citation omitted).

12                                    **DISCUSSION**

13   **I. Exemption 3 (ssi)**

14   The TSA's assertion of protected ssi is supported by the declaration of David

15   Graceson, submitted under seal.  The declaration addresses each "redaction" and explains the

16   specific reasons for the TSA's determination that the redacted information is ssi.

17   Plaintiffs do not challenge the withholding of information the TSA has designated as

18   ssi, although they generally claim the TSA has not provided sufficient details about the

19   withheld information.  The Court disagrees; the TSA could not reveal any more than it has

20   without revealing the ssi itself.  Moreover, the Court has reviewed *in camera* all of the

21   redacted ssi and has determined that all of it is properly withheld.  Plaintiffs also generally

22   complain that the TSA has not clarified that it has segregated non-ssi from ssi.  Again, the

23   Court has reviewed each of the ssi redactions *in camera* and has determined that each is

24   properly asserted.

25   **II. Exemptions 2 and 7(E)**

26   Exemption 2 protects from FOIA disclosure "matters that are . . . related solely to the

27   internal rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The Ninth Circuit has held

28   that this exemption excludes from disclosure "law enforcement materials, disclosure of

                                           3

which may risk circumvention of agency regulation."  See Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653, 656 (9th Cir. 1980).  "'Law enforcement' materials involve methods of enforcing the laws, however interpreted."  Id. at 657.  "Materials that solely concern law enforcement are exempt under Exemption 2 if disclosure may risk circumvention of agency regulation."  Id.

Exemption 7(E) excludes from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Under this exemption the government must make two showings:  (1) that the records were compiled for a law enforcement purpose, and (2) that the records reveal law enforcement techniques or guidelines that, if disclosed, "could reasonably be expected to risk circumvention of the law."  Id.

The FBI "has a clear law enforcement mandate."  Rosenfeld v. U.S. Dep't of Justice, 57 F.3d 803, 808 (9th Cir. 1995).  As a result, the FBI "need only establish a 'rational nexus' between enforcement of a federal law and the document for which [a law enforcement] exemption is claimed."  Id. (internal quotation marks and citation omitted).

> The rational nexus test requires courts to accord a degree of deference to a law enforcement agency's decisions to investigate. The court need not accept the government's claim that a previous investigation had a law enforcement purpose if the asserted purpose is pretextual or wholly unbelievable.  However, in other circumstances, the court should not second-guess a law enforcement agency's decision to investigate if there is a plausible basis for the decision.

Id. (internal quotation marks and citation omitted).

The FBI has identified portions of numerous documents that it claims are protected by exemptions 2 and 7(E).  The FBI places the documents into five general categories: (1) watch list selection criteria; (2) procedures for dissemination of watch lists; (3) procedures for handling potential/actual name matches; (4) raising/addressing perceived problems in security measures; and (5) compilation of watch lists (involving such things as the adding or removing of names).  The FBI contends that "disclosure of information in the five categories

**United States District Court**

**For the Northern District of California**

1  "would permit individuals to devise strategies designed to circumvent the procedures the FBI

2  developed for local law enforcement officials, would enable criminals to educate themselves

3  about various aspects of the FBI's watch list procedures; and consequently, would allow

4  them to take countermeasures in an attempt to evade detection."  Defendants' Motion for

5  Summary Judgment at 33-34.

6      Plaintiffs argue that the FBI has not shown the required "law enforcement purpose"

7  with respect to many of the documents; in particular, memoranda and emails discussing

8  problems with the watch lists.  See, e.g. FBI nos. 248, 268.  Plaintiffs contend that these

9  documents do not relate to a criminal investigation, but instead are more akin to internal

10  audits which do not fall within exemption 7(E).  Plaintiffs' Memorandum at 36.

11      Plaintiffs read the "law enforcement purpose" requirement too narrowly.  Exemption

12  7(E) is not limited to documents created in connection with a criminal investigation.  In

13  Dirksen v. U.S. Dep't of Health and Human Services, 803 F.2d 1456 (9th Cir. 1986), for

14  example, the Ninth Circuit held that disclosure of Blue Shield's internal guidelines for

15  processing medicare claims fell within this exemption:

> It is not difficult to believe that, among the care providers in possession of
> these materials, there would be some who would try to fit their claims into the
> "automatically granted" category.  Nor is it difficult to believe that, upon the
> submission of a barrage of claims fashioned to conform to the Guidelines, the
> Guidelines would lose the utility they were intended to provide.  The requested
> Guidelines serve an auditing function.  This puts them into the category of
> exempt law enforcement material.

20  Id. at 1459.  The redacted memoranda and emails discuss issues that have arisen about the

21  watch lists.  These memoranda and emails were created for a law enforcement purpose;

22  namely, maintenance of various watch lists to protect the American flying public from

23  terrorism.  It is not too difficult to believe that if this information was publicly disclosed,

24  potential terrorists would use the information to circumvent the watch lists.

25      Plaintiffs next argue that because the public has a substantial interest in the

26  information in these documents "Exemption 2 does not bar their disclosure."  Plaintiffs'

27  Memorandum at 20. While the Court agrees that the public has a substantial interest in

28  knowing how the watch lists are created and implemented, the only issue for the Court is

**United States District Court**

For the Northern District of California

1  whether disclosing the information would assist terrorists in circumventing the purpose of

2  the watch lists; if so, the information is exempt from disclosure regardless of the public

3  interest in the material.

4       The FBI has submitted the declaration of Keith Gehle in support of its claimed

5  exemptions. Mr. Gehle's declaration discusses each document in which information has

6  been withheld. In addition, the Court has reviewed *in camera* all of the withheld

7  information. After reviewing Mr. Gehle's declaration and the documents themselves, the

8  Court concludes that the FBI has met its burden of showing that exemptions 2 and/or 7(E)

9  apply to all relevant documents, except two.

10       First, FBI no. 28 was withheld in its entirety. The withheld information includes the

11  legal basis for detaining someone whose name appears on a watch list. The FBI has not

12  adequately explained how this information could be used to circumvent agency regulations.

13  Accordingly, the FBI shall disclose the information withheld pursuant to exemptions 2 and

14  7(E) to plaintiffs.

15       Second, the FBI has not met its burden with respect to the redacted "subject line" of

16  FBI no. 30 and therefore must disclose that information as well.

17       Finally, plaintiffs still challenge the government's refusal to confirm whether their

18  names appear on any watch lists. The watch lists were developed and are maintained for a

19  law enforcement purpose. Requiring the government to reveal whether a particular person is

20  on the watch lists would enable criminal organizations to circumvent the purpose of the

21  watch lists by determining in advance which of their members may be questioned. Plaintiffs

22  appear to acknowledge this risk as they are no longer requesting the watch lists themselves.

23  While such a risk is not posed by plaintiffs, if the Court were to require the government to

24  reveal such information to plaintiffs, it would have to require the government to do the same

25  for all inquiries.

26  **III.    Exemption 5**

27       Exemption 5 provides that FOIA does not apply to "inter-agency or intra-agency

28  memorandums or letters which would not be available by law to a party other than an agency

in litigation with the agency." 5 U.S.C. § 552(b)(5).  "The exemption is 'cast in terms of discovery law,' and entitles an agency to withhold from the public 'documents which a private party could not discover in litigation with the agency.'" <u>Maricopa Audubon Soc. v. U. S. Forest Service</u>, 108 F.3d 1089, 1092 (9th Cir. 1997) (citations omitted).  "Exemption 5 thus covers the attorney-client privilege, the attorney work-product privilege, and the executive 'deliberative process' privilege." <u>Id.</u>

Plaintiffs challenge the government's assertion of the "deliberative process" privilege. "The purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions by ensuring that the frank discussion of legal or policy matters in writing, within the agency, is not inhibited by public disclosure." <u>Id.</u> (internal quotation marks and citation omitted).  To fall within the privilege, the information "must be 'predecisional' in nature *and* must also form part of the agency's 'deliberative process.'" <u>Id.</u> at 1093. "In light of the strong policy of the FOIA that the public is entitled to know what its government is doing and why, exemption 5 is to be applied as narrowly as consistent with efficient Government operation." <u>Id.</u>

"A 'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." <u>Id.</u> at 1093.  A "continuing process of agency self-examination" is not enough to render a document "predecisional." <u>Id.</u> at 1094.  The government "must identify a specific decision to which the document is predecisional;" however, the government need not identify the actual decision that was made based on the document.  <u>Id.</u>

Material forms part of an agency's deliberative process if "the effect of the materials' release--namely, whether disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." <u>Id.</u> at 1094-95 (internal quotation marks and citation omitted).  In <u>Maricopa</u>, for example, the court held the redacted material

1  was deliberative because it consisted of "recommendations" and "suggestions" from an

2  inferior to a superior that reflected the personal opinions of the author.  Id. at 1095.

3      **A.  TSA Documents**

4      The TSA relies on the declaration of Catrina Pavlik to support its assertion of

5  exemption 5.  She explains that the TSA has asserted the privilege for records which were

6  "generated as a result of TSA's initiative to develop a new policy governing the

7  development, maintenance, and use of the No Fly List and Selectee Lists."  Decl. at ¶ 6.

8  Plaintiffs' primary objection is that the date of most of the withheld information is after the

9  TSA had already implemented the watch lists; therefore, they argue, the documents cannot be

10  pre-decisional.

11      Plaintiffs' argument reads the exemption too narrowly; the government may

12  consider whether to make changes to watch list procedures and "deliberative" documents

13  related to proposed changes are exempt from disclosure.  For example, plaintiffs complain

14  that exemption 5 does not apply to TSA no. 44 because the unredacted portion of the

15  document reflects that the document relates to an existing agency regulation.  Plaintiffs'

16  argument, however, ignores the declaration of Catrina Pavlik.  Ms. Pavlik explains that TSA

17  nos. 44-45 reflect agency deliberations regarding *revisions* to agency regulations.  Pavlik

18  Decl. ¶ 12.  That an agency official is "deliberating" on whether or how to change an existing

19  policy, as opposed to deliberating on whether to a adopt an entirely new policy, does not

20  mean the deliberations fall outside the privilege.

21      The Court has reviewed *in camera* the information which the TSA has withheld

22  pursuant to exemption 5.  Nearly all the redactions are well-taken.  In a few instances,

23  however, the TSA applies this exemption too broadly.  For example, on TSA no. 9, the

24  government has redacted portions of the document based on the deliberative process

25  privilege (among other exemptions).  The redacted sections, however, are not a

26  recommendation, proposal, or opinion on a proposal, but are instead a recitation of current

27  problems with the watch lists.  Nonetheless, all of the information on this document, and

28  //

United States District Court

For the Northern District of California

8

1  other TSA documents which the Court has found the TSA improperly withheld under

2  exemption 5, is protected from disclosure as protected ssi.

3      **B. FBI Documents**

4      Gehle's declaration meets the FBI's burden as to most of the information withheld

5  pursuant to exemption 6.  In some instances, however, Gehle fails to identify any decision

6  which was being considered.  For example, again with respect to FBI no. 28 (see ¶¶ 34-35 of

7  Gehle declaration), Gehle generally claims that the withheld emails "reflect preliminary

8  internal deliberations within the FBI regarding the legal and policy issues relating to 'no-fly'

9  and 'selectee' lists and the FBI's law enforcement authority with respect to persons named on

10 the list."  He thus has not identified any "decision" which was under consideration; indeed,

11 as previously explained, the emails reveal a question about the legal basis for detaining

12 persons whose names appear on the lists.  To interpret the deliberative process privilege so

13 broadly as to encompass any question and answer violates the rule that the deliberative

14 process privilege should be applied as narrowly as is consistent with government operations.

15 See <u>Maricopa Audubon Society</u>, 108 F.3d at 1093.  At oral argument, in response to a

16 question from the Court regarding this document, the government identified Gehle paragraph

17 18 as providing a basis for the application of exemption 5.  That paragraph, however, does

18 not refer to FBI no. 28.

19     The government claims that the material redacted pursuant to exemption 5 on FBI

20 no. 29 "reflects internal deliberations within the FBI regarding what steps should be taken to

21 enhance coordination between the TSA and the FBI and to improve procedures used to

22 disseminate the TSA's 'no fly' and Selectee lists."  Gehle Decl. ¶ 5.  While the issue as to

23 this document is close, the government has met its burden.  The portions of the document

24 redacted solely pursuant to the deliberative process privilege reflect an inferior's personal

25 opinions and reflections communicated to a superior for the purpose of the superior

26 determining how the agency should address an issue.  See <u>Maricopa Audubon Soc.</u>, 108 F.3d

27 at 1095.

28 //

**United States District Court**

For the Northern District of California

1   The FBI redacted three sentences on FBI no. 200 pursuant to exemption 5.  The FBI

2   explains that these sentences consist of a Special Agent's comments on a draft letter.  The

3   FBI's description, however, is inaccurate.  The only portion of the redacted sentences that

4   discloses the substance of the draft letter, and therefore the author's recommendation as to

5   how to respond to a congressional mandate, begins at word 17 in the fifth sentence of the

6   second full paragraph, and ends at the end of that sentence.  The remaining redacted material

7   does not fall within exemption 5.

8   The FBI has failed to meet its burden of showing that exemption 5 applies to

9   document nos. 232-33 and 240.  All of these documents were withheld in their entirety on the

10  basis of several exemptions, thus it is impossible for the Court to discern precisely which

11  information is being withheld under exemption 5.  The FBI merely asserts that the

12  deliberative process privilege applies and does not identify any possible decision that was

13  "deliberated."  See, e.g., Gehle Decl. at p. 118 (stating only that exemption 5 applies to

14  document nos. 232-33 "because it contains information protected under the deliberative

15  process privilege and these redactions were made because disclosure of this information

16  would inhibit government employees from engaging in full, frank, and open internal

17  discussions").  Indeed, the FBI claims that the attorney-client privilege applies to document

18  no. 240, but no attorney is a party to the email and the FBI gives no explanation as to how

19  this privilege applies.  Its "evidence" of the deliberative process privilege is also inadequate.

20  Accordingly, the FBI shall disclose the material redacted pursuant to exemption 5 on

21  document nos. 232-33 and 240.

22  The FBI applies exemption 5 too broadly in other instances as well, but the redacted

23  material is exempt from disclosure under exemptions 2 or 7(E), as also claimed by the FBI.

24  See, e.g., FBI nos. 220, 264-65, 270.

25  **IV.    Exemption 6**

26  Exemption 6 protects "personnel and medical files and similar files the disclosure of

27  which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C.

28  § 552(b)(6).  "The Supreme Court has defined 'similar file' broadly as government records

1  containing 'information which applies to a particular individual.'" <u>Minnis v. Dept. of</u>

2  <u>Agriculture</u>, 737 F.2d 784, 786 (9th Cir. 1984) (quoting <u>United States Dep't of State v.</u>

3  <u>Washington Post Co.</u>, 456 U.S. 595, 602 (1982)). "Exemption 6 is intended to protect

4  'individuals from the injury and embarrassment that can result from the unnecessary

5  disclosure of personal information.'" <u>Bowen v. U.S. Food & Drug Admin</u>., 925 F.2d 1225,

6  1228 (9th Cir. 1991) (internal quotation marks and citation omitted);  <u>see also</u> <u>Dobronski v.</u>

7  <u>F.C.C.</u>, 17 F.3d 275 (9th Cir. 1994) (applying exemption 6 to sick leave records);  <u>Van</u>

8  <u>Bourg, Allen,Weinberg & Roger v. N.L.R.B.</u>, 728 F.2d 1270, 1273 (9th Cir. 1984) (applying

9  exemption 6 to names and addresses of employees eligible to vote for a union).

10      To determine if exemption 6 applies, the Court must weigh the interests involved:

11      First, in evaluating whether a request for information lies within the scope of a
       FOIA exemption, such as Exemption 6, that bars disclosure when it would
12     amount to an invasion of privacy that is to some degree "unwarranted," "a
       court must balance the public interest in disclosure against the interest
13     Congress intended the [e]xemption to protect."

14     Second, the only relevant "public interest in disclosure" to be weighed in this
       balance is the extent to which disclosure would serve the "core purpose of the
15     FOIA," which is "contribut[ing] significantly to public understanding *of the*
       *operations or activities of the government.*"
16
17  <u>U.S. Dep't of Defense v. Federal Labor Relations Board</u>, 510 U.S. 487, 496 (1994) (citations

18  omitted).

19      **A.    TSA employees**

20  _____The TSA seeks to use exemption 6 to redact some of the names of government

21  officials that appear in otherwise disclosable documents.  After the Court ordered the TSA to

22  review its response to plaintiffs' FOIA request, the TSA disclosed the names of officials

23  holding the position of Associate Under-Secretary or higher, as well as the names of those

24  individuals who interact with the public and/or Congress.  Pavlik Decl. at ¶¶ 25-26.  The

25  TSA continues to withhold all other names on the ground that identifying these persons as

26  employees who work on the watch lists will subject these employees to harassment.  <u>See</u>

27  Pavlik Decl. ¶ 22 (stating that the disclosure of the employees' names would constitute an

28  unreasonable invasion of privacy because the documents would reveal that the employees

**United States District Court**

For the Northern District of California

1    work on issues concerning the No Fly or Selectee lists--"facts which, if disclosed, might lead

2    to harassment").

3         The Court previously ruled that the TSA had not met its burden of showing that

4    exemption 6 permits it to withhold the names of TSA employees as such information--their

5    names--is not "private." The TSA asks the Court to reconsider its ruling.

6         The TSA still has not demonstrated that an employee's name alone makes a document

7    a personnel, medical or "similar file." 5 U.S.C. § 552(b)(6). If "similar file" is interpreted as

8    broadly as the TSA urges, the "personnel, medical or similar file" condition is surplusage;

9    Congress could have simply exempted the disclosure of *any* document that would constitute

10   an unwarranted invasion of privacy.

11        Nor has the TSA met its burden of showing that revealing the names of TSA

12   employees that appear on otherwise disclosable documents would "constitute an unwarranted

13   invasion of personal privacy." Id. It offers no evidence to support its speculation that the

14   employees are likely to be harassed if their names are released. See Department of Air Force

15   v. Rose, 425 U.S. 352, 380 n.19 (1976) (stating that "[t]he legislative history is clear that

16   Exemption 6 was directed at threats to privacy interests more palpable than mere

17   possibilities"). This evidentiary omission is especially glaring in light of the TSA's

18   disclosure of the names of "higher level" employees more than six months ago; it offers no

19   evidence that these officials have been "harassed" as a consequence of the disclosure.

20        None of the cases cited by the TSA support its application of exemption 6. While

21   several cases have held that an employee has a privacy interest in his name *and home

22   address*, see, e.g., Minnis v. United States Dep't of Agriculture, 737 F.2d 784, 786 (9th Cir.

23   1984); National Assoc. of Retired Federal Employees v. Horner, 879 F.2d 873, 875 (D. C.

24   Cir. 1989), the TSA does not cite a single case in which a court has permitted a non-law

25   enforcement agency to uniformly redact government employees' names from otherwise

26   disclosable documents pursuant to exemption 6.

27        The TSA's citation of United States Dep't of Navy v. Federal Labor Relations

28   Authority, 975 F.2d 348, 352 (7th Cir. 1992) as supporting the proposition that "courts have

1   recognized that there is privacy interest in the release of an individual's name in association

2   with his employment position in the federal government," Defendants' Memorandum at 44,

3   is unpersuasive.  The case involved an order of the Federal Labor Relations Authority

4   directing the Navy to release to the Navy's employees' exclusive bargaining representative

5   the names *and home addresses* of all bargaining unit employees.  The Seventh Circuit held

6   that FOIA did not compel the disclosure of the information because federal employees "have

7   a privacy interest in their names and home addresses."  Id. at 353.  The court did not hold that

8   non-law enforcement government employees have a privacy interest in keeping their

9   positions in the government secret.

10      Even assuming the TSA employees have some, slight, privacy interest in keeping their

11   names private and that the appearance of their name alone makes a document a "similar file"

12   for purposes of exemption 6, revealing the names of government employees who are making

13   important government policy serves FOIA's core purpose of contributing to the public's

14   understanding of how its government operates.  Knowing *who* is making government policy

15   with respect to the watch lists is relevant to understanding *how* the government operates.

16      TSA document no. 46 is an example of the public interest at issue.  This document is a

17   memorandum memorializing a meeting concerning the watchlist "false positive problem"--a

18   problem in which there is significant public interest.  The TSA has redacted the names of all

19   but one of the attendees of the meeting.  The public, however, has an interest in knowing

20   who--and at what level of the government--is working on this significant problem that affects

21   many Americans.  See also TSA nos. 50-53 (names of government officials redacted from

22   documents demonstrating the organization of a working group to develop TSA watch list

23   policy).

24      In sum, the TSA has not met its burden of demonstrating that exemption 6 applies to

25   the names of its "lower-level" employees.  Exemption 6 has never been interpreted as

26   broadly as the TSA urges, and the Court declines the TSA's invitation to be the first court to

27   do so.

28   //

**United States District Court**

For the Northern District of California

**B.  Airline employees**

The same analysis applies to airline employees whose names appear in otherwise disclosable documents.  The TSA has not identified any privacy interest of the airline employees, and no interest which would render disclosure of their names an unwarranted invasion of privacy.  Therefore the FOIA-recognized public interest in knowing who has access to, is managing, and implementing the watch lists, even if in any particular situation it is slight, outweighs the virtually non-existent privacy interest.

**C.  Third parties**

The Court's analysis is different for the names of persons who have complained to the TSA about the operation of the watch list and who have not otherwise made their complaints public (by, for example, speaking to a newspaper).  A memorandum recounting a civilian's efforts to avoid being repeatedly stopped before flying is a government record containing "information which applies to a particular individual."  Washington Post Co., 456 U.S. at 602.  Moreover, a person might not want it publicly known that he or she has been repeatedly stopped from boarding airplanes, just as one might not want it known that he was interviewed in connection with a criminal investigation.  There is, therefore, a privacy interest in the fact that one complained or was stopped.  On the other hand, there is some public interest in knowing the names of those who are stopped: for example, do the airlines frequently stop persons of a certain ethnicity, or persons with a common name. "Hiding" the identities of those who are "false positives" conceals from the public something about the operation of the watch lists.

On balance, the Court concludes that the individuals' privacy interests outweigh the limited public interest in knowing the identity of third parties whose names appear in documents responsive to plaintiffs' FOIA request.  The government represents that it does not maintain a list of "false positives;" revealing the few names that happen to appear in responsive documents will shed little, if any, light on the operations of the government. Moreover, if these individuals desire their complaints to be public, they may make them so as many, such as plaintiffs, have done.

14

United States District Court

For the Northern District of California

1   **V.   Exemption 7(C)**

2        Exemption 7(C) provides that materials may be withheld by an agency if they are

3   "records or information compiled for law enforcement purposes, but only to the extent that

4   production of such law enforcement records . . . (C) could reasonably be expected to

5   constitute an unwarranted invasion of privacy." 5 U.S.C. § 552(b)(7)(C).  Exemption 7(C) is

6   limited to "law enforcement materials," but is broader than exemption 6.  First, it is not

7   limited to medical, personnel or similar files, but instead applies to all information or records,

8   provided they are compiled for a law enforcement purpose.  Second, unlike exemption 6,

9   which requires that disclosure *would constitute* an unwarranted invasion of privacy, under

10  exemption 7(C) the agency need only show that disclosure *could reasonably be expected* to

11  constitute an unwarranted invasion of privacy.  See Rosenfeld v. U.S. Dept of Justice, 57

12  F.3d 803, 812 (9th Cir. 1995) (stating that exemption 6 requires a showing of a more

13  intrusive invasion of privacy than exemption 7(C));  Hunt v. F.B.I., 972 F.2d 286, 288 (9th

14  Cir. 1992) (stating that exemption 6 is not co-extensive with exemption 7(C)).  "Where law

15  enforcement records are sought (Exemption 7(C)), the threatened invasion of privacy need

16  not be as likely as where personnel, medical, or similar files are at issue (Exemption 6)."  Id.

17  Thus, the Court's analysis of the FBI's exemption 7(C) withholdings is not controlled by the

18  Court's conclusions as to the TSA's assertion of exemption 6.

19       "In order to determine under Exemption 7(C) whether the production of responsive

20  law enforcement records or information could 'reasonably be expected to constitute an

21  unwarranted invasion of personal privacy,' the public interest in disclosure of the responsive

22  information must be weighed against the privacy interests of the information." Neely v. FBI,

23  208 F.3d 461, 463-64 (4th Cir. 2000).  "The sole cognizable public interest for FOIA is the

24  interest 'to open agency action to the light of public scrutiny,' to inform the citizenry 'about

25  what their government is up to.'"  Rosenfeld, 57 F.3d at 811 (citation omitted).

26       In its Memorandum and Order on the parties' initial motions for summary judgment,

27  the Court held that the government had not met its burden of showing a law enforcement

28  purpose with respect to an email from a Wall Street Journal reporter, and, in any event, had

redacted more information than necessary.  In response to the Court's order, the FBI has

disclosed the email.  The Court also commented that the FBI had used exemption 7(C) to

withhold entire documents when it could have simply redacted an individual's name.  The

FBI has now corrected this error as well.  Plaintiffs, however, still challenge the FBI's

assertion of exemption 7(C) to redact the names of FBI officials and third parties that appear

in the FBI documents.

### A.    The names of government officials

Courts have held that law enforcement officials have a privacy interest in non-

disclosure of their names in connection with law enforcement investigations.  See Neely, 208

F.3d at 464 (stating that law enforcement officials have a substantial interest in the

nondisclosure of their identities and their connection with particular investigations because of

the potential for future harassment, annoyance, or embarrassment); Jones v. F.B.I., 41 F.3d

238, 247 (6th Cir. 1994) (stating "that federal law enforcement officials have the right to be

protected against public disclosure of their participation in law enforcement investigations

pursuant to exemption (b)(7)(C)") (internal quotation marks and citation omitted).

In Neely, an inmate sought disclosure under FOIA for information in his FBI file.

The FBI withheld the names of FBI agents, among others, pursuant to exemption 7(C).  The

court affirmed on the ground that the agents' privacy interest in not disclosing their names in

connection with a particular investigation outweighed the negligible public interest in their

names.  Id. at 464.  The court noted that "there being no compelling allegation of agency

corruption or illegality, there would appear to be no reason on the record before us to assume

that these names and identifying information bear in any way upon the agency's performance

of its statutory duties or contribute significantly to public understanding of the operations or

activities of the government."  Id.

Similarly, in Jones, the plaintiff, who had been convicted of murder, sought FBI

records related to himself and a group he founded.  41 F.3d at 239.  Some of the records he

received in response to his FOIA request led to the granting of his habeas corpus petition.  Id.

at 241.  The FBI redacted the names of FBI agents appearing in many of the documents.

United States District Court

For the Northern District of California

16

1    After acknowledging that law enforcement agents have a privacy interest in not having their

2    participation in law enforcement investigations disclosed, the court concluded that the public-

3    -as opposed to the plaintiff litigant--did not have an interest in knowing the names of the

4    agents as "the identity of these persons does not shed any light on the operations of the FBI."

5    Id. at 247 (internal quotation marks and citation omitted).  The court concluded that "the

6    withholding of these identities does not significantly limit the picture these documents paint

7    as to what the FBI was up to and what it knew about plaintiff, Afro Set, and their activities."

8    Id.

9        The FOIA request at issue here is of a different nature than those at issue in Neely and

10    Jones and the other cases cited by the FBI.  The FOIA-recognized public interest in knowing

11    how its government operates is somewhat facilitated by disclosing the names of certain

12    agents involved with the watch lists.  The Court has reviewed in camera each 7(C)

13    exemption claimed by the FBI.  Many of the documents are authored by or contain the name

14    of a special agent who, the documents reveal, was intimately involved in the administration

15    of the watch lists.  The agent's responsibilities included sharing information with the TSA

16    and the airport agents responsible for stopping passengers, as well as communicating with

17    legal counsel, and at times, members of the flying public.  See, e.g., FBI nos. 1, 5, 15-16, 28-

18    53, 61-66, 71-74, 84, 98, 105, 121-123, 135, 136, 138, 147, 148, 156, 157, 177.  The FBI has

19    also redacted the supervisor "in the Terrorism Watch List," see, e.g., FBI nos. 105, 117-118,

20    121-124, 128-129, 131, 133, 138, 157, and the name of a TSA employee who was

21    responsible for advising the FBI and others on how to have a name placed on a watch list.

22    See, e.g., FBI nos. 90, 116, 128-130, 135.

23        It is beyond peradventure that the public has a strong interest in understanding the

24    government's administration of the watch lists.  Every day our government's implementation

25    of the watch lists delays members of the flying public for minutes or even hours because their

26    names matched or were similar to a name on one of the lists.  The public thus has a right to

27    know, and to demand, that the lists are being administered as competently as possible so as to

28    minimize the number of "false positives."  "Who" at the FBI is coordinating the watch lists

17

United States District Court

For the Northern District of California

1    reveals something about what the FBI "is up to," at least with respect to those officials who

2    have policy-making and implementation positions.  See Rosenfeld, 57 F.3d at 811.  As

3    plaintiffs argue, revealing the names of the agents who have been given responsibility for the

4    watch lists may help the public to evaluate whether the FBI is taking the watch lists, along

5    with the well-known problems with the lists, seriously enough.  Thus, unlike Jones and

6    Neely, the public interest is served somewhat by revealing the names of FBI officials, albeit

7    only to a slight degree given that the FBI has revealed the "position" of some of the redacted

8    agents and given that plaintiffs have not articulated any public interest in learning the name

9    of any particular agent.

10        This slight public interest must be balanced against the privacy interests of the

11    individual officials.  See Rosenfeld, 57 F.3d at 811.  The FBI claims that revealing the names

12    of officials involved in counter terrorism activities "could reasonably be expected to attract

13    the attention of those who would attempt to use this information to gain unauthorized access

14    to sensitive law enforcement information and/or to intimidate, harass or harm these

15    employees."  Gehle Decl. ¶ 30.  The FBI also argues that "given the intense media scrutiny

16    surrounding these issues, disclosure of the FBI SSAs identity in connection with the 'no fly'

17    list could subject the FBI SSAs to unauthorized inquiries by members of the media and the

18    general public who seek access to information regarding the criteria and procedures used

19    when determining whether an individual poses a threat to civil aviation."  Gehle Decl. ¶ 35.

20        The latter privacy interest does not outweigh the public interest in knowing who is

21    making the policies that have such a profound effect upon the flying public.  The FBI need

22    not reveal telephone numbers, email addresses, or other contact information that would

23    enable the media or public to contact the officials directly.  Thus, it is not reasonably

24    expected that revealing their names will engender an avalanche of inquiries to these officials.

25        The former interest--that revealing these agents' names could attract the attention of

26    terrorists--is more compelling.  The threshold for application of exemption 7(C) is lower than

27    exemption 6; namely, the FBI must show that disclosure "could reasonably be expected to

28    constitute an unwarranted invasion of privacy."  Common sense dictates that revealing the

United States District Court

For the Northern District of California

1    names of officials intimately involved with the distribution, implementation and maintenance

2    of watch lists could reasonably be expected to  make these officials targets of those who want

3    access to the lists or non-public information about the lists.  This privacy interest outweighs

4    the minimal public interest in learning the names of these officials, especially since plaintiffs

5    have not identified any public interest in learning whether ant specific person is or is not

6    involved with the lists.  See Neely, 208 F.3d at 464 (finding that since there was no allegation

7    of agency corruption or illegality there was no FOIA-recognized interest in learning the

8    names of the investigating agents).

9           **B.     Third parties**

10          The Court also concludes that the privacy interests of third parties who have

11   complained to the FBI about being frequently stopped, see, e.g., FBI nos. 177-180, 181,

12   outweigh the public interest in learning the names of those who have so complained.

13   Plaintiffs' reliance on Rosenfeld is unconvincing.  In Rosenfeld, the district court ordered the

14   government to release the names of persons who had been the subject of FBI investigations

15   in connection with the Free Speech Movement.  The court held there was a public interest in

16   "knowing whether and to what extent the FBI investigated individuals for participating in

17   political protests."  57 F.3d at 812.  Disclosing the names of the investigation subjects would

18   make its possible for the public to compare the subjects of the FBI's investigations to the

19   roster of the Free Speech Movement's leadership.  Therefore, the Ninth Circuit concluded,

20   there was a strong public interest in revealing the names of the subjects, a public interest that

21   could not be served through any other means.  Id.

22          Here, revealing the names of the handful of persons who have complained to the FBI,

23   or have sought the FBI's assistance with their aviation transportation problems, will not

24   reveal whether and to what extent the FBI has abused the watch lists.  The FBI has

25   represented that it does not "keep track of" the names of persons who are "falsely" stopped

26   for being a watch list match; thus, there is no list which, if disclosed, would reveal if people

27   of a particular race, ethnicity, name or belief are being disproportionately stopped.

28   Disclosure of the few third party names in the FBI's responsive documents will  simply

United States District Court

For the Northern District of California

1  reveal the names of some of the persons who have contacted the FBI; it will not shed any

2  light on the number of false matches or the general "make up" of the false matches.

3  Plaintiffs have not articulated any public interest in knowing the names of these few persons,

4  especially since these individuals are free to publicize their watch list experiences if they

5  desire.  In Rosenfeld, in contrast, the public could learn the identities of the subjects of the

6  FBI's investigation only if the FBI disclosed their names as only the FBI knew whom it had

7  investigated.  57 F.3d at 812.

8          **C.    Law enforcement purpose**

9          Finally, plaintiffs suggest that the redacted and withheld FBI documents were not

10  created for a law enforcement purpose and thus exemption 7(C) does not apply in the first

11  place.  See Rosenfeld, 57 F.3d at 808 (finding that the FBI's assertion of a law enforcement

12  purpose for an investigation was a pretext for investigating the subject because of her

13  activities in the Soviet Union).  The Court has reviewed all of the information withheld

14  pursuant to exemption 7(C) and concludes that the information was compiled for a law

15  enforcement purpose; namely, the information was compiled in connection with maintaining

16  the watch lists to prevent another terrorist attack on civil aviation.  There is nothing in the

17  redacted information that suggests that the FBI's assertion of a law enforcement purpose is

18  pretextual, that is, that the FBI is placing names on the watch lists because of a person's First

19  Amendment activities rather than for a law enforcement purpose.

20  **VI.    Privacy Act**

21          Plaintiffs also allege that defendants violated subsection (d)(1) of the Privacy Act, 5

22  U.S.C. section 552a(d)(1), by failing to grant plaintiffs Gordon and Adams access to records

23  indexed or maintained under their names or identifying information.  Complaint ¶ 39.

24          The Privacy Act gives an individual access to records which pertain to him and are

25  found in a system of records maintained by an agency.  See Exner v. F.B.I., 612 F.2d 1202,

26  1203-04 (9th Cir. 1980).  The Act also denies an individual access to records maintained by

27  an agency whose principle function is the enforcement of criminal laws.  See id. at 1204.

28  "To exempt a system of records from access under the Privacy Act, an agency must, first,

20

United States District Court

For the Northern District of California

1   promulgate rules, pursuant to the rulemaking requirements of  5 U.S.C. § 553(b)(1), (2), and

2   (3), (c) and (e), and, second, state the reasons in the rule itself why the system of records is to

3   be exempt from a provision of the Act. 5 U.S.C. § 552a(j)." Id.

4   _____Plaintiffs concede that records maintained in the FBI's Central Records System

5   ("CRS") are exempt from disclosure.  The FBI nonetheless represents that it searched its

6   CRS for records about plaintiffs and found none.  Declaration of David Hardy (Jan. 2004) at

7   p. 14 n.21.  Plaintiffs claim that the FBI's representation cannot be trusted, and that it may

8   have non-exempt documents that pertain to plaintiffs, because the FBI did produce an email

9   that had attached to it a *Wall Street Journal* article which discusses plaintiffs.  Plaintiffs also

10  contend that the TSA's records are not exempt from disclosure.

11       The Court has reviewed *in camera* all of the documents produced by defendants in

12  response to plaintiffs' FOIA request.  Except for the *Wall Street Journal* article, none of the

13  documents pertain to plaintiffs.  Plaintiffs have not identified any evidence that suggests that

14  the FBI or the TSA is withholding responsive documents.  Moreover, to the extent plaintiffs

15  contend that the Privacy Act requires the TSA to reveal whether plaintiffs' names appear on

16  the no-fly or selectee lists, the Court disagrees for the reasons stated in its discussion of ssi.

17                                    **CONCLUSION**

18       For the foregoing reasons, plaintiffs' second motion for summary judgment on its first

19  cause of action (FOIA) is denied in part and granted in part; defendants' second motion for

20  summary judgment on the first cause of action (FOIA) is denied in part and granted in part;

21  plaintiffs' motion for summary judgment on its second cause of action (Privacy Act) is

22  denied; and defendants' summary judgment motion on the second cause of action (Privacy

23  Act) is granted.

24       The parties' second set of summary judgment motions do not address the third cause

25  of action (classifying plaintiff ACLU as a member of the media).  The parties shall advise the

26  //

27  //

28  //

Court in writing by Tuesday, June 28 as to whether this cause of action is still at issue.

**IT IS SO ORDERED.**

_____
                                         /s/
Dated: June 23, 2005                     CHARLES  R. BREYER
                                         UNITED STATES DISTRICT JUDGE

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28